# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2977-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

D.T.A.,

     Defendant-Appellant.

_____

Submitted October 29, 2018 – Decided November 13, 2018

Before Judges Sabatino and Sumners.

On appeal from Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 14-03-0192.

Joseph E. Krakora, Public Defender, attorney for appellant (Molly O'Donnell Meng, Assistant Deputy Public Defender, of counsel and on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Ali Y. Ozbek, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried by a jury, defendant D.T.A.[1] was found guilty of committing first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1) (count one); second-degree sexual assault, N.J.S.A. 2C:14-2(b) (count two); and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (count three). The minor victim was defendant's stepdaughter. At sentencing, the trial court merged count two with count one as a lesser-included offense. The court imposed a sixteen-year custodial term on count one, with an eighty-five percent parole ineligibility period mandated by the No Early Release Act, N.J.S.A. 2C:43-7.2, plus a concurrent four-year term for the endangerment offense in count three. Defendant was also required to register as a sex offender under Megan's Law and submit to parole supervision for life.

In his brief on appeal, defendant raises two points for our consideration:

> POINT I
>
> THE TRIAL JUDGE ABUSED [HIS] DISCRETION BY DENYING DEFENDANT'S MOTION FOR A BENCH TRIAL BASED ON CONCERNS FOR EFFICIENT JUDICIAL ADMINISTRATION.
>
> POINT II
>
> A REMAND FOR RESENTENCING IS REQUIRED BECAUSE THE TRIAL COURT ERRRED [SIC] IN

---

[1] We use initials to protect the identity of the minor victim, who is related to defendant.

A-2977-16T4

FINDING AGGRAVATING FACTORS THREE, FOUR, SIX, AND NINE.

Having reviewed these arguments in light of the applicable deferential standards of appellate review, we affirm both defendant's conviction and sentence.

I.

The State's proofs at trial demonstrated that defendant sexually assaulted his three-year-old stepdaughter, A.G., on October 3, 2013, an act that was witnessed by the child's mother. Defendant acknowledged that he engaged in an act of second-degree sexual assault, but maintained his conduct did not comprise a first-degree offense because there was no proof of penetration. See N.J.S.A. 2C:14-2 (defining first-degree aggravated sexual assault as the commission of an act of sexual penetration under certain specified circumstances); N.J.S.A. 2C:14-1(c) (defining sexual penetration).

We summarize the pertinent trial evidence as follows. At the time of the incident, defendant and J.A.[2] were married to one another and living in Paterson with two children. Defendant and his spouse had one child together, J.A. ("Jessie"), who was approximately thirteen months old at the time of the incident. The other child, A.G., was from the mother's previous relationship and

---

[2] Because the mother has the same initials as her infant daughter ("J.A."), we shall refer to the infant by the fictitious name of "Jessie."

A-2977-16T4

was three years old. Both A.G.'s bed and Jessie's crib were located in the living room.

According to the mother's trial testimony, on October 3, 2013, she went to sleep early because she had to get up early for work the following morning. When she went to sleep, defendant was still awake and was watching television with A.G., which she testified was not uncommon. After about an hour, the mother woke up and went into the living room. She then saw defendant kneeling by A.G.'s bed, with his face near A.G.'s "private area." The mother observed A.G. was laying across the bed with her legs open, and she was staring at the ceiling. The mother approached defendant and asked him what he was doing to A.G. According to the mother, defendant responded that he was not doing anything and that he had heard A.G. crying while he was in the bathroom and came to check on her.

According to the mother, when she walked closer to A.G.'s bed, she saw that A.G. was not wearing underwear. She also noticed Vaseline on the bed. The mother took A.G. to the bathroom, examined her private area, and noticed that it was "shiny." A.G. told the mother in the bathroom that her vagina hurt.

The mother took A.G. back to A.G's bed. Defendant went to sleep in the bed he shared with the mother. The mother stayed with A.G., and asked her

4

what happened. According to the mother, the conversation proceeded as follows: "I said, who touched your vagina, and she said daddy. I asked her who removed your underwear. She said daddy. I asked her what he used to touch her vagina, and she said his tongue." The mother testified that she did not call the police that night because she was confused and in shock.

The next night, when the mother returned home from work, she confronted defendant about the incident. Defendant initially denied any sexual contact with A.G. Defendant and the mother then began arguing in the kitchen about the incident. Eventually A.G. come into the kitchen and the mother asked A.G. who touched her vagina. According to the mother, A.G. responded that "daddy" touched her vagina, and that defendant had tackled her, told her to hold still, and then "put his tail on my tail." A.G. demonstrated what she meant by the word "tail" by hitting defendant in the penis.

After the mother continued questioning defendant, he eventually admitted to her that he had been masturbating when she entered the living room. The mother then called the police. Defendant became angry, and left the apartment before police arrived. The police responded, and A.G. was taken to a hospital, where she was examined. After the hospital examination, the mother took her children to stay with a babysitter.

A-2977-16T4

Several days after the incident, the mother requested a police escort to return to the apartment to obtain belongings. When the mother arrived, defendant was at the apartment. Both the mother and defendant were brought to the Passaic County Prosecutor's Office for interviews.

Defendant waived his Miranda[3] rights and took part in a police interview without counsel. At first, defendant denied any sexual contact, telling the interviewing detective that he had been masturbating and had heard A.G. crying, and merely went to check on her. Eventually, defendant acknowledged to the detective that "[i]t's exactly what [A.G.] said, I put my tongue on my daughter." Defendant admitted to rubbing his penis on A.G.'s vagina, but denied engaging in penetration. He also admitted that he moved A.G. around on her bed, which woke her up. He acknowledged that he had removed her underwear. After the interview ended, defendant was arrested and charged with the present offenses.

Medical testing of A.G. did not reveal signs of injury. Dr. Paulett Diah, who testified at trial as an expert in child abuse examinations, examined A.G. in November 2013. Dr. Diah explained that it is possible to penetrate a vagina with a penis and not injure the hymen. Forensic testing on A.G.'s underwear produced no blood and no male DNA was found.

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

Defendant did not testify at trial. His counsel maintained that the State's witnesses failed to establish beyond a reasonable doubt that he engaged in penetration that would elevate the offense of second-degree sexual assault under N.J.S.A. 2C:14-2(b) to first-degree aggravated sexual assault under N.J.S.A. 2C:14-2(a).

## II.

With this factual backdrop in mind, we consider defendant's first contention that the trial court erred in denying his motion under Rule 1:8-2(a), which the prosecutor had opposed, to have his case tried by a judge rather than by a jury. For the reasons that follow, we conclude the judge did not misapply his discretion in denying the motion, given our limited scope of review of such a determination.

As the United States Supreme Court long ago instructed in Patton v. United States, 281 U.S. 276 (1930), a criminal defendant does not have an unfettered right to waive a trial by jury. The United States Supreme Court in Patton recognized that the right of trial by jury in criminal cases expressed in Article III, Section 2, Clause 3 and the Sixth Amendment of the United States Constitution is intended "primarily for the protection of the accused." Id. at 297. Even so, a defendant's waiver of the right to a jury trial does not have to be "put

A-2977-16T4

into effect at all events." Id. at 312. "Trial by jury is the normal and, with occasional exceptions, the preferable mode of disposing of issues of fact in criminal cases above the grade of criminal offenses." Ibid. Given the importance of the jury's institutional function as factfinder in criminal cases, "the consent of government counsel and the sanction of the court" at times can override a defendant's preference for a non-jury trial. Ibid.

The New Jersey Supreme Court amplified these principles in the seminal case of State v. Dunne, 124 N.J. 303 (1991). In Dunne, 124 N.J. at 309-312, the Court held that a criminal defendant does not have an absolute right to demand a non-jury trial under either the United States or the New Jersey Constitutions. The defendant in Dunne was charged with murder after he had confessed to stabbing a man to death. Id. at 307. The defendant anticipated raising an insanity defense at trial that would require expert testimony about his alleged abnormal homosexual fantasies, which may have motivated him to attack and kill the victim. Ibid. The defendant moved for a non-jury trial. He argued that a jury would adversely react to his insanity defense and that a judge would be in a better position to evaluate the expert testimony and merits of such a defense without any of the anticipated biases of the jury. Id. at 308-09. The court denied the motion. Id. at 307. The Supreme Court affirmed the trial court's denial of

8

defendant's motion and articulated the principles that guide our analysis in the present case.

The Court in Dunne made clear that it is within the trial court's discretion to approve a defendant's request to waive a jury trial. Id. at 314; see also State v. Fiorilla, 226 N.J. Super. 81, 93 (App. Div. 1988). "In exercising that discretion, a court must consider the competing factors that argue for or against jury trial." Dunne, 124 N.J. at 315. Indeed, because the trial court is required to balance various factors in considering a request for a bench trial, "[t]he sources of principled decision-making will remain rooted in a statement of reasons that will accompany the decision. This statement of reasons will give structure to the trial court's discretionary judgment and will soundly guide appellate review." Id. at 317-18. As the court emphasized, it "repose[s] the greatest confidence in the ability of trial judges to exercise sound discretion," on such matters. Ibid.

Specifically, Dunne holds that when a trial court considers a request to waive a jury trial, it must:

> (1) [D]etermine whether a defendant has voluntarily, knowingly, and competently waived the constitutional right to jury trial with advice of counsel;

A-2977-16T4

(2) [D]etermine whether the waiver is tendered in good faith or as a stratagem to procure an otherwise impermissible advantage; and

(3) [D]etermine, with an accompanying statement of reasons, whether, considering all relevant factors, including those listed below, it should grant or deny the defendant's request in the circumstances of the case.

[Dunne, 124 N.J. at 317].

The third listed factor requires the court to weigh the following considerations:

[T]he gravity of the crime . . . the position of the State, the anticipated duration and complexity of the State's presentation of evidence, the amenability of the issues to jury resolution, the existence of a highly-charged emotional atmosphere, the presence of particularly-technical matters that are interwoven with fact, and the anticipated need for numerous rulings on the admissibility of evidence.

[Ibid.]

The Court in Dunne placed particular emphasis on the gravity of the crime, explaining "we believe that the more serious the crime, the greater the 'gravity' of the offense . . . the greater the burden on the defendant to show why there should be a non-jury trial." Id. at 314-15 (citing Patton, 281 U.S. at 313). Indeed, as the Court explained, "[i]n major crime litigation, to consider public confidence in the jury process as a relevant factor in the balance can never be deemed inconsequential." Dunne, 124 N.J. at 315. The Court reiterated this

10

point several pages later in its opinion, when it discussed the balancing of factors, and explained: "[a]t one end of the scale, tilting in favor of a jury trial, will be the gravity of the crime. The higher the degree of crime, the greater weight given to that factor." Id. at 317.

We applied these principles in State v. Jackson, 404 N.J. Super. 483 (App. Div. 2009). In that case, we upheld the trial court's denial of a defendant's request for a new trial, after he had waived his right to a jury trial and was subsequently found guilty in a bench trial of murder and other offenses. The defendant argued that the trial court had misapplied the Dunne factors when granting his request to waive a jury trial. As we explained in rejecting their argument:

> Dunne makes it clear that the factors a trial court is required to consider in determining whether to grant a defendant's request for waiver of a jury trial, with the exception of [the first factor], are primarily designed to provide assurance that the grant of the waiver will not undermine the public's confidence in the criminal justice system.
>
> [Id. at 490 (emphasis added).]

This "public confidence" aspect can be a key consideration in evaluating a particular defendant's request for a non-jury trial.

Here, the trial judge, the Honorable Sohail Mohammed, thoroughly and methodically applied the Dunne factors in reaching his determination to deny defendant's request for a non-jury trial. We summarize his analysis as follows.

As to the first factor, the judge determined that defendant knowingly and voluntarily waived his right to a jury trial in his signed affidavit. Regarding the second factor, the judge determined that although a bench trial might offer some tactical advantage to defendant, defendant's motion had not been sought in bad faith.

Judge Mohammed acknowledged that the third factor was the most controversial, and carefully expounded each consideration listed under this factor in Dunne. First, the judge recognized that gravity of the crime was serious. He reasoned that defendant was charged with "one first-degree offense, which is the most serious under our criminal code, and two second-degree offenses with a maximum exposure of thirty years and a maximum parole ineligibility of twenty-six years." Moreover, the judge noted there is also a presumption of incarceration as to the first and second-degree charges. See N.J.S.A. 2C:44-1(e). Therefore, the judge "accord[ed] somewhat of a greater weight to this factor."

Next, the judge considered the position of the State, opposing defendant's motion to waive a jury trial. The judge duly considered the good faith reasons the State had for taking this position, finding "the issue of the victim, the public confidence in the court, and the judicial system that we have is certainly a consideration that needs to be given in terms of analyzing and giving weight to the position of the State[.]" The judge afforded this factor "somewhat of a medium weight on the scale."

Additionally, the judge considered the anticipated duration and complexity of the State's presentation of evidence. The judge noted that the anticipated trial duration, as it predicted in the State's pre-trial memorandum, was approximately three days for the State's case and defendant's case in one day. Reasoning that the evidence would include testimony by the child, the mother, and a medical expert and observing that " . . . there is nothing unusual, nothing complex about this case[,]" the judge concluded that the anticipated duration and complexity of the State's presentation would not be especially involved. Therefore, the judge gave this factor "medium weight in favor of the State and denying the application."

The judge next considered the amenability of the issues to a jury resolution. The judge recognized defendant's argument, which was "concerned

about the degree of sexual contact . . . that is, defendant admitted to touching, but not to the penetration . . . ." However, the judge concluded this aspect would be within the ken of average jurors, considering they would hear the victim's statement, the expert witness's testimony, defendant's statement, and would be required to follow court instructions throughout the proceeding. Finding that the issue of penetration was not "outside of the realm of an average juror," the judge weighed this factor in favor of the State. Indeed, at oral argument on the motion to waive jury trial, defendant acknowledged that juries across the State are generally "willing and able to fairly adjudicate cases involving sexual allegations." Defendant expressed concern, however, that jurors in this particular setting might not evaluate his culpability for a first-degree offense fairly, knowing that he had essentially admitted to a second-degree assault.

The fifth factor considered was the existence of a highly-charged emotional atmosphere. The judge observed that this factor may work both ways, meaning it could "work for to advantage of the defendant, or to the State." A similar observation was recognized by the Court in <u>Dunne</u>. <u>See</u> 124 N.J. at 317. Judge Mohammed acknowledged that the facts of this case were likely to generate a highly-charged emotional atmosphere, especially because the victim was a child. However, as the judge observed, that atmosphere "in and of itself

14

does not take this case out of the jury's hand[s] and place [it] in the hand of a judge to decide this issue." The judge was not persuaded the matter "is of such a highly charged emotional nature that [it] cannot be presented to reasonable jurors." He thus weighed the factor in favor of denying the application.

The sixth factor considered was the existence of particular technical matters that are interwoven with fact. The judge recognized this factor is most likely to be relevant to defendant's concern that he had admitted only to sexually touching the victim but not to penetrating the victim. Even so, the judge found that the issue of penetration-versus-touching is not so particularly technical that jury instructions would be insufficient to guide jurors on the issue. Although he recognized what he characterized as defendant's "legitimate concern," the judge concluded that jurors would be capable of resolving the issue. He therefore weighed it in favor of denying the application.

The seventh, and final, factor considered on the motion was the anticipated need for numerous rulings on the admissibility or inadmissibility of evidence. Although the judge recognized that there were several motions pending on the admissibility of evidence, he concluded that all of these are relatively standard motions filed in cases such as this. The judge reasoned that, even if there was a bench trial, he would still have to spend the same amount of

time to address the majority of the motions. Hence, "in reality the anticipated numerous rulings will have very minimum effect on this case in terms of a jury trial versus non-jury trial." The judge afforded this factor low-to-medium weight in denying the application.

Judge Mohammed summed up his analysis with the following observation:

> In considering the totality of the circumstances and considering all of the factors that I have just stated which were announced in Dunne and also considering the fact that in Dunne the Court emphasized that the jury trial should be the norm, and . . . there shall be occasional exceptions . . . I do not find this case . . . falls into that occasional exception.

After the judge issued his oral decision denying the motion for a bench trial, defendant reserved the possibility of renewing the motion if it became apparent from the voir dire process that he would be unlikely to get a fair trial. The judge acknowledged defendant's request, but observed:

> [A] lot of these questions can be raised through the voir dire questions that we're going to have. So I'm going to encourage both of you to submit the questions that you want me to consider and when we select the jurors with the voir dire questions that you're going to propose I think that will address some of it, if not all of the concerns, but we'll see when we cross that bridge[.]

We have carefully considered defendant's claim on appeal that the trial judge erred in denying his motion for a non-jury trial. Having done so, we discern no abuse of discretion in the judge's ruling. To be sure, defendant had a good faith basis to request a non-jury trial, in light of the nature of the sexual allegations involving a child victim and the emotional aspects of the case. Even so, we are not persuaded the judge, in whom case law reposes the "greatest confidence" to decide such discretionary applications, Dunne, 129 N.J. at 318, misapplied the applicable principles in denying the request. Moreover, defendant has presented no indicia from the jury voir dire transcript excerpts that a fair and impartial jury could not have been empaneled.

## III.

Defendant's second argument asserting that the court imposed an unfair and excessive sentence upon him requires little comment. "In sentencing, trial judges are given wide discretion so long as the sentence imposed is within the statutory framework." State v. Dalziel, 182 N.J. 494, 500 (2005). See also State v. Roth, 95 N.J. 334, 365 (1984) (appellate courts may not substitute their judgment for that of the sentencing court, unless the application of the sentencing guidelines to the facts makes the sentence "clearly unreasonable so as to shock the judicial conscience."). Once the trial court has balanced the

17

aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b), it "may impose a term within the permissible range for the offense." State v. Bieniek, 200 N.J. 601, 608 (2010); see also State v. Case, 220 N.J. 49, 63 (2014).

In his sentencing analysis, the judge found that aggravating factors two, three, four, six, and nine of N.J.S.A. 2C:44-1(a) applied, as well as mitigating factors eight and nine under N.J.S.A. 2C:44-1(b). Defendant challenges in particular the trial court's findings regarding aggravating factors three, four, six, and nine. He does not contest the court's reliance on aggravating factor two.

We are satisfied the trial court appropriately applied these various factors, and did not abuse his discretion or stray from the governing law. We simply note that we reject, in particular, defendant's claim that aggravating factor four, N.J.S.A. 2C:44-1(a)(4), does not apply here. That aggravating factor applies either if the conduct involved a breach of the public trust, or that the defendant took advantage of a "position of trust or confidence" to commit the offense. See N.J.S.A. 2C:44-1(a)(4). Defendant's brief argues that there was no violation of the public trust here. That is true, but the second alternative clause of aggravating factor four requires a breach of a position of trust or confidence, whether or not it is "public." See N.J.S.A. 2C:44-1(a)(4); see also State v. Hess, 198 N.J. Super. 322, 329-30 (App. Div. 1984). Because of defendant's

relationship of trust with the child victim as her stepfather, this aggravating factor logically applies and was rightly considered.

The trial court's reliance on aggravating factors three, six, and nine also was entirely appropriate. N.J.S.A. 2C:44-1(a)(3), (6), and (9). Defendant has an extensive record of prior offenses, and the need to deter him from reoffense is quite obvious.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2977-16T4